JOHN HARDING *vs.* HENRY N. JANES.

Where goods were sold, which were not in the possession of the vendor at the time, but in the possession of a third person, who was notified, and consented to keep them for the vendee, it was held that the sale was not fraudulent, though there was no actual change of possession.

Where the vendor, in such case, had authority from the vendee to sell or to let the goods, and he accordingly sold a part, and let the residue, and received payment therefor, it was holden that such acts of the vendor were not evidence of fraud.

This was an action of trespass for taking and carrying away cer-tain pot-ash kettles and a hogshead. Plea, *not guilty.* The plaintiff claimed title to the potash kettles by virtue of a sale from one Alvin House. The defendant justified the taking by virtue of a writ of attachment in favor of Southwick, Cannon and War-ren, against said House. It appeared in evidence that in July, A. D. 1826, House owned the kettles which were then in his ashery, at Montgomery ; that about this time the kettles were ta-ken by Thomas H. Campbell, sheriff's deputy, on a writ of at-tachment in favor of Runnels and Hunt, against House ; that when the kettles were attached they were taken out of House's ashery by Campbell, and put upon the land of one Upham, in the road, about five or six rods distant from House's ashery, and were re-ceipted by Upham, at the request of House, to Campbell. In September, 1826, Runnels and Hunt obtained a judgement in said suit against House ; on which execution was issued, and, soon after, delivered to Campbell for collection, who took the ket-tles thereon, and advertised them for sale : but while he had the execution he informed House, if he would get some person to sign a note with him, payable to Runnels and Hunt, he would take it in satisfaction of the execution. On the 25th day of December, 1826, House went to Kelleyvale, where the plaintiff then resided, and sold to him the kettles, in consideration of his signing a note with House to Runnels and Hunt, for the amount of the execu-tion, being the sum of 120 dollars, and agreeing to pay the same : which note Campbell received of House in full satisfaction of the execution ; and the same was paid by the plaintiff in December, 1828, amounting then to about 140 dollars. At the time of the sale of the kettles to the plaintiff, they were in the possession of Upham, and soon after, in the same December, the plaintiff in-formed Upham, he had bought the kettles, and requested him to keep them for him until he called for them ; and he kept them accordingly until April, 1827, when House showed him a line from the plaintiff directing House to sell or rent the kettles for him

Franklin,
January,
1832.

Harding
vs.
Janes.

to the best advantage. About the 25th of March, 1827, the plaintiff told Upham that he might use one of the said kettles to make sugar. On the 10th of April, 1827, the plaintiff wrote to House, and desired him to sell the kettles, if he could, otherwise, to rent them to the best advantage for him. House immediately called on Upham, and told him that he was directed by the plaintiff to sell or rent the kettles, and informed him he must pay him, the said House, for the use of the kettle, which he had previously used on the licence so given by the plaintiff; and Upham afterwards paid to House two dollars for the use of said kettle. About the 10th or 12th of April, 1827, House who then owned and occupied a dwelling house, store and ashery, from which the kettles had previously been taken by Campbell, at Montgomery, all situated within a few rods of each other, rented the ashery with the leaches, troughs, pans, tools, and apparatus, to one Sherman, to make potash in, for a certain sum per ton for the use of said works; and also rented to him the kettles; and Sherman then took the kettles, and put them into the ashery, and used the ashery and kettles together for two or three weeks: he then left the kettles in the ashery, where they remained until August, A. D. 1828, when they were attached and taken by the defendant as the property of House. Sherman paid to House five dollars for the use of the kettles. After Sherman had done using the kettles, House rented one of them to one Rand, and Rand paid House for the use of it five dollars. In April, 1828, House sold one of the kettles, but one not of those now in question, to S. B. Upham, for 45 dollars, and took a note for the same, payable to the plaintiff; and at the same time House rented said ashery, with the leaches, troughs, pans, tools and apparatus, and the kettles, then being in the ashery, to the said S. B. Upham, for the purpose of making potash, it being then understood that the kettles were the property of the plaintiff, that House acted as his agent in letting them, and that the pay for the use of them was to go to the plaintiff. Upham occupied and used the ashery and kettles from the time they were rented to him until August, 1828, and was in the occupation and use of them at the time the kettles were attached by the defendant; after which he paid House ten dollars for the use of the ashery, and twenty dollars for the use of the kettles. House testified that, in selling and letting the kettles, he acted as agent of the plaintiff, and was to account to him for what pay he received.

The plaintiff proved he bought the hogshead filled with whiskey of Austin Fuller, and placed the same in the possession of House,

FRANKLIN,
January,
1832.

Harding
vs.
Janes.

at his store in Montgomery, to sell the whiskey by retail, on his, the plaintiff's, account; that at the time the defendant was attaching the kettles, he told House he had attached the hogshead. House then stated to the defendant, there were a few gallons of whiskey in the hogshead, and requested the defendant to let the hogshead remain a few days [until the whiskey was emptied; to which the defendant then assented, and directed House, when the whiskey was out, to set the hogshead out at the store door. A few days after this, House emptied the hogshead, and set it out at the store door, according to the direction of the defendant, where it remained until after the commencement of this suit; and the defendant had not at any time, either before or after the commencement of the suit, intermedled with said hogshead in any other way than as above stated, and by returning it on the writ as attached by him.

The defendant's counsel requested the court to charge the jury, that the plaintiff left the kettles in possession of House under such circumstances, that they were liable to be attached by the creditors of House, and that the facts proved by the plaintiff could not make the defendant liable in an action of trespass for the hogshead. But the court charged the jury, that as the kettles had been attached by Runnels and Hunt, and taken and advertised for sale on the execution, and the plaintiff gave his note in satisfaction of the execution, and in consideration thereof the kettles were sold to him by House, they would consider the sale valid as against the attachment made by the defendant, if they believed House acted as the agent of the plaintiff in renting the kettels, and the sale was without fraud, or intent to avoid the rights of House's creditors; it appearing that at the time of the sale the kettles were in the possession of one of the Uphams, who had notice of the sale, and kept them for the plaintiff until Sherman took them, and put them into the ashery under the letting to him, and at the time of the attachment by the defendant, were in the possession and use of the other Upham, and under the letting to him. The acts of House, however, in relation to the kettles, being instructed by the plaintiff to sell or rent them, and take payment for the use, were evidence to be weighed by the jury with the other facts in the case, in determining whether the sale was merely colorable, or was in fact fair and *bona fide*. The court further charged the jury, that the facts proved in relation to the hogshead would enable the plaintiff to recover for it; and that the measure of damages

would be the value of the property at the time it was attached by the defendant. A verdict was returned for the plaintiff.

FRANKLIN,
January,
1832.

Harding
vs.
Janos.

The defendant excepted to the charge of the court; whereupon the cause was removed to this court.

WILLIAMS, J., delivered the opinion of the Court. The jury have found that there was no actual fraud in the sale under which the plaintiff claims the property for which this suit was brought. They must have found that there was a sale; that it was made upon adequate consideration, and that what was done by House, was done by him as the agent for the plaintiff. The only question then is, whether, from the facts, the defendant was entitled to a charge from the court that the sale was fraudulent *per se*. The principle which has been adopted by this Court heretofore in relation to those sales which had been adjudged to be fraudulent in law, is no doubt a very salutary one, and one from which we feel no disposition to recede. We consider it a principle of the common law, and in every way well calculated to secure the interest of creditors, and to protect them against any attempt on the part of their debtors to defraud them of their legal and just rights. We must, however, take the principle as we find it given to us by the decisions of judicial tribunals. And as we have no wish to relax the rule, so we are not at liberty to extend it to other cases, or, in other words, to make a new rule of law which has not heretofore been adopted or contemplated.

The principle is, that in every absolute sale of chattels, if the vendor remains in possession, and has the control of them as before the sale, the sale is fraudulent in law and void; that in every sale of personal property, except a sheriff's sale, there must be a substantial and visible change of possession, or the law will declare it void; that every officer attaching goods or chattels must take them into his actual custody and possession, or they will be liable to a subsequent attachment by any other officer. But it has also been decided that the principle does not extend to the case of a sale of personal property which was not in the possession of the vendor at the time, but in the possesion of a third person, who was notified of the sale, and consented to keep the property for the vendee. This was decided in the case of *Barney* vs. *Brown*, 2 *Vt. Rep.* 374; and is in conformity with the decisions of the English reports, where the former principle in relation to sales fraudulent in law, is recognized. It is upon the ground that the vendor has neither the actual nor constructive possession, and is divested of all control over the property sold.

Franklin,
January,
1832.
———
Harding
vs.
Janes.

If the decision made in the case of *Barney* against *Brown* is adhered to, it is decisive of the present case. The goods when attached, in the first instance, were taken out of the custody and possession of the vendor, and put into the hands and possession of one Upham. House exercised no control over them, nor could he have any control of the same. While thus in possession of Upham the sale was made to the plaintiff. Upham was notified of the sale, and consented to keep the goods for the plaintiff, and did accordingly keep them for him for the period of four months, when House, as the agent of the plaintiff, and for his benefit, used them in the manner set forth, but never used them as his own, or exercised any control over them, as an owner. Without, therefore, making a new rule of law, and extending the principle heretofore adopted to cases not within the mischief intended to be remedied, and to a length inconvenient and embarrassing, we cannot say that the sale was fraudulent, or that the court should so have charged the jury. It never was, and never should be, understood that a sale attended with all the circumstances which the law requires to render it good and valid, shall be avoided, if the property at any distance of time, and under any circumstances, shall be found in the custody of the former vendor, and under such circumstances too, that no one can be deceived or defrauded. The court in this case considered that the acts of House, the vendor, were proper to be taken into consideration by the jury, as evidence of actual fraud, and so directed the jury, who have found that no such fraud existed.

The charge has been objected to because the judge told the jury, that if House, in what he did, acted as the agent of the plaintiff, the sale might be valid. It would have been objectionable if the jury had been instructed that the fact of the vendor's *remaining* in possession, as agent of the vendee, would take a case out of the rule of law in relation to those sales which are void. But such was not the instructions to the jury. Here was a sale, which, agreeably to all the rules heretofore adopted, was good in its inception, and remained so for more than four months. The attention of the jury was then properly directed to the consideration of the acts of House after that period, and whether he acted as agent or owner on the question of actual fraud. If House was the owner in fact, the plaintiff's case was at an end, and the defendant was justified in taking the goods as his property. If he acted as owner with the knowledge of the plaintiff, it was evidence to be considered by the jury that the sale under which the plaintiff

FRANKLIN,
*January,*
1832.

Harding
*vs.*
Janes.

claimed was fraudulent in fact: but if he acted merely as the agent of the plaintiff in taking charge of the property for his benefit, at that distance of time from the sale, and did not appear ostensibly as the owner, it did not affect the previous valid sale to the plaintiff. We think the case was properly left to the jury, and see no legal ground for disturbing the verdict.

The judgement of the county court must, therefore, be affirmed.

*Smith & Royce,* for plaintiff.

*Smalley & Adams,* for defendant.